Good afternoon, Illinois Appellate Court, First District Court is now in session, the Sixth Division, the Honorable Justice Sharon O. Johnson presiding, case number 121-1543, People v. Angel Navarro. Thank you. Good afternoon. I'm Justice Sharon O. Johnson, presiding judge of the Sixth Division. I'm joined by my colleagues, Justice Michael B. Hyman and Justice Carl A. Walker. Each side will be given 20 minutes in which to make their argument, with the appellant having the ability to reserve time for rebuttal. I'd like you both to state your appearances for the record, beginning with the appellant. Matt Chapman, on behalf of the defendant appellant, Agent Navarro. Okay, Attorney Matt Chapman, and counsel for the appellate. Good afternoon, Your Honors, Assistant State's Attorney Sarah McGann, on behalf of the people of the state of Illinois. Thank you. Attorney Chapman, how much time would you like to reserve for rebuttal? Five minutes, please. I'm hearing a feedback. There is an echo. Do you have another device on nearby? I think I've got it plugged in twice. Okay, so if you can hang up the other. Yeah, that's what he's going to do. Okay, let's try that. Okay, can you hear me okay now? Very good. You may proceed. Oh, I'm sorry. How much time are you going to reserve? Five minutes, please. Okay, very good. You may proceed, counsel. Thank you, Your Honor. Good afternoon, counsel. May it please the court. From the beginning, Agent Navarro has maintained that he was simply walking through his neighborhood when he was grabbed off the street by an overzealous police officer, Jonathan Meir. At the time, Officer Meir was chasing the suspect who was wearing all white The next person Officer Meir saw was wearing a black hoodie. That was Agent Navarro standing waiting to cross the street. Despite this, we know the facts. What is the best argument for the reason why we should reverse? We believe that the new evidence which shows that Officer Meir lied during an official investigation casts the trial evidence in a different light and that he has therefore set forth a colorable claim of actual innocence. How does the fact that in a different case he was found to have lied apply here? Sure. It calls his credibility into question, which in other similar types of cases has been found to be relevant and found to have cast the trial evidence in a different light. This was a key witness for the state in this case. He was alone with the suspect for some period of time. Again, this discrepancy in appearance has never been explained. He was also the one whose actions led to the show-up and those later identifications, which of course are inherently unreliable when it's a one-man show-up with the defendant, the suspect, in handcuffs. So this central witness now showing to have been lying in an official investigation really calls his credibility into question and just casts things in a different light. But Mr. Chapman, here we have Magdaleno, Colin, and Garcia all testified that he was the shooter. I know that you're looking at this claim of actual innocence, but there are cases out there where that claim has been rejected, where there have been three different witnesses identifying and testifying at trial that this was the shooter. Sure. Again, their initial identification of Mr. Navarro was during a show-up, and courts have been really clear that that's a highly, highly suggestive environment, that they are generally condemned, that type of procedure. And because Officer Muir was the one who initiated that took Mr. Navarro into custody and then took him in front of these eyewitnesses, his credibility is really an issue there. And there were other, albeit minor, inconsistencies in their testimony about how well they could see him and whether he was walking or running and those sorts of things. And when you take all those and then add in this fact that Officer Muir now is shown to be lying, we think that that casts everything in a different light, just sufficient to get through the pleading stage here. You say that he is shown to be lying, but not shown to be lying in this case. That's correct at this point. Okay. So how is it that, you know, I understand your argument that his credibility is now in question, but what I think Justice Walker was getting to is that you have all this other evidence as well. So how is that one fact likely to change the outcome here? Sure. You know, again, he was such a central witness to this whole thing. He initiated the series of events. You know, he was alone with Navarro on the street when he arrested him. There was nobody else around to sort of corroborate that part of the story. And then all of the witnesses did note that, you know, they felt it was strange that this guy was wearing different clothing. And during a show procedure, the eyewitnesses are just being asked to essentially confirm suspicions that this is the offender. They're not put in an environment where they have to make a choice from multiple options, obviously. And so just that highly suggestive of these eyewitnesses or of the identification is already questionable. And then I think just considering all of the evidence from trial and then adding in this idea that, you know, his credibility is questionable could lead to a different result. So how does an officer's past conduct here, specifically lying in another case, impact reliability as a witness in subsequent trials? Is what we're saying here that once that is known, it changes the equation in every case. Is that what you're saying? I mean, it's hard to say in every case, obviously. But yes, I would say that it's always relevant, you know, a person. But if they didn't know, which is he didn't, the defendant did not know, his counsel did not know, wasn't obtained until years later. Right. So I mean, I think that that's the entire purpose of these successive post-conviction proceedings is that now this has come to light. I think if obviously it's a sort of different situation, but if we look at the pattern and practice cases, those are all about newly discovered evidence that directly go to officer's credibility. That's essentially the entire basis of those post-conviction petitions that then get a lot, you know, those move forward and they hold evidentiary hearings and decide the merits. But at the leave to file stage where he only needs to set forth a colorable claim, believe that this, you know, evidence as to his credibility is highly relevant and is enough to warrant further proceedings. What about the state discusses that he hasn't really made a sufficient claim for actual innocence? They have several reasons for that. What's your response? I mean, you know, as to the elements of an actual innocence claim, I don't think that there's really any question about the materiality and the non-cumulative nature of these two things. The state does make some argument about whether this is newly discovered, but there's a lot of cases out there talking about how this type of evidence, police reports, are incredibly hard to obtain. I think that's borne out here where it was years after Mr. Navarro filed his FOIA request that he was finally able to obtain this information. And then obviously the conclusive character element is the most important. And as I've already stated, you know, I think that his credibility is key to the state's case here, and it's enough to pass the trial evidence in a different light and call into question the outcome from the initial trial. I would also just like to point out that the Illinois Supreme Court a number of times in just recently in Griffin has pointed out that the standard for setting forth an actual innocence claim at the pleading stage is a low burden. And really right now we're all just asking him to be able to move forward, get counsel, flesh this out, and have his claims heard, have his day in court essentially. And his counsel can reframe his petition. Right. Obviously, yeah, his motion and petition is not the most artfully drafted. You know, there are some arguments, I guess, in the briefing about whether this is even actual innocence claim, because he just talks about it in the motion. But I think with counsel, he'd be able to shape this into something a little bit more substantial and see where it goes from there. Counsel, the alleged lie occurred in, was it 1996 or so, in the 90s? I believe so. But your client didn't issue the FOIA request until, was it 2016? 2015, I believe. But yeah. Sorry, go ahead. So it begs the question as to how this is newly discovered, because it should have been available at the time of the initial trial. Sure. You know, I think that we, it's not a question of whether it was in existence at the time of trial or even, you know, when previous petitions were filed. It's more a question of the petitioner was aware of its existence. And I think that in this case, he just wasn't aware of it until the time that he filed his FOIA request. And I think from a sort of policy perspective, we don't want defendants to just go out on phishing schemes to try to dig up anything that they can. Some of the pattern and practice cases talk about that and that, you know, in some of these cases, the only way to find this evidence would be to go out and interview every single person who was questioned by a particular detective to collect affidavits. And that's not something that they really want to condone. Well, not that, but just issue the FOIA request. Sure. Yeah. I think that as soon as Mr. Navarro was aware of the potential that this was out there, he filed his request and diligently, you know, tried to track it down. Why did it take so long from, he got the materials in 2017. This is seven years later. What, why the delay from 2017 to today? Is there any explanation for that? I'm honestly not sure that I can account for that. It may have just been his, him taking his time trying to draft this and maybe waiting to see if he was going to get any other information. You know, I think that the law really encourages petitioners to include everything that they possibly can in their petitions. And so I'm not sure if he was waiting on other outstanding requests or just waiting to collect more information. I can't speak to that for sure. And you're aware though, that in terms of the, your misidentification theory, the jury was aware of that and they basically rejected that previously. Of course. Yeah. And I just think that again, Officer Muir was the one who sort of initiated this whole series of events of the chase and then the arrest of Mr. Navarro after he saw him on the street. And that at the time the jury didn't have this information about Officer Muir's credibility. And so having that may have led to a different outcome and at least casts that evidence in a different light. And so the real question is whether no reasonable jury would have convicted in light of the new evidence. I mean, the question here is. Well, that's not the question here. That'll be the ultimate question, I guess. Right. And I think it's important to, sorry, go ahead. No, go ahead. You can continue, please. Yeah, I just think it's important to keep in mind where we are.  We only need to determine whether it's a colorable claim. Oh, this is a successive petition. Yes. Okay. You do have two minutes left, Council. I was going to say, if your honors don't have any more questions, I'll just reserve the rest of my time and just again, reiterate that we're and we're just asking for him to get his day in court. Thank you. Okay. Thank you very much. S. A. McGann, or the appellee, you may proceed. Thank you, your honor. Council, your honors, may it please the court. Your honors, this court should affirm the trial court's denial of petitioner's leave to file his successive post-conviction petition for several reasons. Initially, by way of factual background, just briefly, as this court has previously recounted, three eyewitnesses unequivocally identified petitioner regarding the murder on August or April 6, 2004, wherein these, each of these eyewitnesses saw petitioner shoot the victim twice. Now, I think Justice Hyman was hinting at the sufficiency of the claim. Correct me if I'm wrong, Justice, but procedurally here, petitioner misses the mark. We do not have a post-conviction petition that has met the pleading requirements. Even at this initial leave to file stage, petitioner needed to comply with the act, which requires that the petition allude to the actual innocence claims. Here we have actual innocence referenced in his motion. Isn't that form over substance? The Supreme Court has told us, as you just acknowledged, these are to be taken with a low bar because we have individuals with legal training whatsoever. He did spend, if I'm not mistaken, something like four pages or more on the innocence, so be it not in the petition, but it's in the record. That can easily be corrected once it gets canceled, should we reverse. Certainly, Your Honor. Successive post-conviction petitions, as this court is well aware, is an extraordinary remedy, and they must comply procedurally with the act. But that aside, petitioner also does not present a freestanding claim of actual innocence. In People v. Washington, this court did carve out another allowance, if you will, of a claim to bring forth a fundamental fairness exception. The act, we have codified in the act the cause and prejudice test. The court in Washington recognized the viability of a freestanding actual innocence claim, which would be based on newly discovered evidence. Thereafter, in People v. Hobley, this court explained that a freestanding claim of actual innocence cannot also be reliant upon the same evidence that a petitioner uses to support constitutional claims. The reasoning behind that is clear. Evidence cannot be both new and not new. Even at this leave-to-file stage- Well, you won't deny that this is new. He had no, Mr. Navarro had no idea about the, as far as from everything that's in the record, no idea until 2017 what these documents might reveal. It took two years to get the document. So once he received them, wasn't that have potential consequences on him with regard to what happened at the trial? Your Honor, no, this was not newly discovered evidence or- How can it be not newly discovered? I don't understand that. He had no idea about this. His lawyers never looked into it. So why wouldn't this be newly discovered? The case law seems to me to indicate it's newly discovered. Your Honor, by virtue of petitioner's petition, he's relying on this evidence to state that it was not newly discovered. And then also relevant to this appeal that it is newly discovered. However, it's still his burden to explain why he did not discover it. He did file an initial post-conviction petition in 2008, and then a motion for ballistics testing in 2013. And there's no explanation as to why he to discover this evidence. We only know that he filed the FOIA and it took two years, the FOIA in 2015, and he received it in 2017, but that has no bearing on- It's a very low threshold. It seems to me that you're arguing it would raise the threshold from first to second stage. And also, Ms. McGinn, I'm sorry, I thought your attention- Oh, go ahead. The issue is whether or not he's presented a culpable claim. In terms of those explanations, that'll come once counsel gets appointed. That's what Mr. Chapman is arguing here. Do you want to respond to that? Your Honor, at this leave to file stage, petitioner must comply as the act dictates with the procedural requirements. And that would be a proper pleading in the petition. Yes, he does not have to explicitly state what the claim is, but enough for the trial court to funnel it into the proper lane here. And also, the case law, which has been reiterated by the Supreme Court dictates that this must be freestanding. So even at this leave to file stage, the evidence cannot be both supporting the constitutional claims and the actual innocence claims. But even all of that aside, petitioner fails on the merits of his claim. Petitioner claims that the evidence here, or implies I should say, was weak as far as the show-up evidence. Now, I would just point out that this court did visit that claim in his initial post-conviction petition and found that the show-up procedure was in fact proper. All of that aside, what we have here is an unrelated sustained complaint against Officer Meir. Again, on an unrelated case that at best shows he did not tell the truth about witnessing a battery of a suspect in custody. Isn't the credibility of a police officer's testimony vital to our judicial process? Your Honor, yes, at best here, this would be impeachment of Officer Meir, which is not at all... But he didn't know about it. He couldn't have impeached, he didn't know about it. So now we have the credibility of the police officer being raised. Isn't that vital if we're going to have any integrity to our judicial process? Your Honor, yes. I would just argue for analyzing the conclusive component. At best, this may have impeached Officer Meir. However, impeachment is not enough for actual innocence, especially... We don't know. That's why we got to go to the next stage to find that out. I mean, we don't look at anything right now with regard to getting into the weeds on it. That comes later. Because at this point, the evidence doesn't have to be dispositive, Ms. McGann. It just needs to be enough that likely after the results of a retrial might change. And it might once this evidence comes out. That's sort of the question. We don't know. We're not saying it will. The standard the Supreme Court has set is whether it's likely after the retrial that the results may change. And certainly at this stage, taking the evidence is true that Officer Meir lied on this unrelated case. That would not change the outcome of this case. It is not likely that it would change the outcome of petitioner's guilty verdict. How do you know that? Your Honor, if we removed Officer Meir's testimony completely, we still have three eyewitnesses who witnessed this shooting. We also have... But their identification was based on, I guess, the show up that the officer was in charge of. So if his testimony is found not to be credible, doesn't that beg the question as to any other evidence that resulted therefrom? Your Honor, because this court has already found that the show of procedures were proper, any credibility issues with Officer Meir would have no bearing. And it also would not remove their credible and compelling testimony at trial where they also identified petitioner and reiterated that each of them saw petitioner in their own way. I just point out here, regarding the clothing... What you're skipping, excuse me, but what you're skipping is that when that decision was made by the court back in 2008, if I'm not mistaken, they did not know. Nobody knew about this credibility question. And so the court believed the officer was telling the truth and that everything, whatever happened. And so the result, even of that lineup or show up, that show up might be different considering the newly discovered evidence. And that to me is the point that counsel was trying to make on behalf of Mr. Navarro. Certainly, Your Honor. And the state's report is not enough for actual innocence in this case. That has no bearing on Officer Meir's credibility as far as the show up and the arrest here. We have another... You don't think a jury's perception of the evidence would be affected by knowing about an officer's past lies? Your Honor, I do not think in this case it would have any bearing. I think there are... But none of us can say that. I mean, you can argue it, I know, but we don't know that. And until we know more... The man is saying he's innocent. And the county of Cook has had a problem with innocent people being imprisoned. And so it would seem that we need to follow the Supreme Court's lead with regard to this low bar. So I'm trying to reconcile what you're saying with that. If you can reconcile, that would help. Sure, Your Honor. And I think it is a low threshold. However, it's an exacting standard with regards to successive post convictions. So we do have cases that have shed light on this issue wherein the detectives and people versus Tyler, there was systemic, longstanding abuse, coerced confessions in that case. And Tyler, that defendant was beaten, alleged that he was beaten and his confession was coerced by the same officers. I mean, it's a So yes, at best, this would be impeachment of Officer Muir regarding a lie on an unrelated case. And it would not be likely to undermine the jury's verdict, where we have three eyewitnesses who unequivocally testified that they saw a petitioner shoot the victim in this case. Thereafter, they participated in a show up. This court has found that show up procedure to be another detective on the scene there, believe another officer as well, at least an investigating officer that showed up a little bit later. So this is this is not enough, even at this stage, even at this leave to file stage, where the court is going to review both the pleading requirements, procedural requirements, and the merits of the case, the substantive merits, that is what is petitioner can shape his claims even further. It is, again, an extraordinary remedy. And that is why we have this procedure in place. So your honors, it is the state's position that petitioners petition, or leave to file petition was properly denied by the trial court at this leave to file stage. And we would ask that you affirm that dismissal if there are no other questions of the people would rely on all the other arguments contained in their brief. Any additional questions from the panel? Thank you very much, counsel. Attorney Chapman, you have reserved seven minutes for rebuttal. Thank you, Your Honor. Just a couple quick points. I just want to make a very quick point on the freestanding in actual innocence claim. The state's argument there relies largely on Hobley. And this court has pretty much emphatically rejected that holding. The first district in Martinez noted that that there was no basis in principle, and essentially declined to apply that. That's really all that I want to say about it. I think that the court's point there that it puts petitioners in a really, it denies them justice by forcing them to choose between an actual innocence claim or some other constitutional claim. And I would just encourage this court to continue that line. Also know that that question is in front of the Illinois Supreme Court as we speak. Flournoy was argued in March, and we're just awaiting a decision on that. So hopefully they will clarify that a little bit as well. I think the only other thing that I want to address is that, again, we're at the leave to file stage. The Illinois Supreme Court has said that here the question is only whether the evidence supporting the petition puts the trial evidence in a different light and undermines the court's confidence in the judgment at trial. And I think that we've met that burden here. This really calls into question the show-up procedure, those identifications. There are still unanswered questions about this change in appearance. And so I believe that at this stage, Mr. Navarro has set forth a colorable claim of actual innocence. What about Council's argument about the tenuous connection of this- Sure. From, you know, this back several years before trial? Yeah, again, I would point to the pattern in practice cases. Those go to the officer's court. Clearly, cases like Tyler, there was a lot more instances. I mean, you can't compare the two. No, no. I'm not comparing them in unequal footing, but I think that at the end of the day, questions being raised about an officer's credibility is incredibly important and casts the entire thing in a different light. I think, Justice Hyman, your point about the importance of honesty from officers in our justice system is so key. And so when we have some evidence here at this stage of past lying during official investigations, that calls credibility into question. And I also know that the connection is one thing at this point. If we get past this point and we get to second stage and he gets counsel, there might be more investigation. Other things might come to light that would flesh this claim out and make it even stronger. Mm-hmm. Counsel, do you have any information that there are or are not any additional claims or cases wherein this officer was found to have been untruthful? Because it has been almost 40 years and perhaps that was an isolated incident and it was just one case in the past 40 years. Have you done any investigation into that? I have not done any investigation into that. I'll just leave it. I haven't done any investigation of that. I think that's best left for later stages of the post-conviction proceedings. All right. Any additional questions from the panel? No. All right. Well, that concludes these proceedings. I want to thank both counsels as well as your offices for the excellent representation here today. This is a very interesting case and you have certainly advocated in an excellent fashion on today. And so I appreciate your arguments and the time that you have committed to this case thus far. You've given us a lot to consider and we will issue our opinion as soon as practicable. And thank you very much. That concludes this matter.